Patterson Thank you for your support. Unfortunately, the learning centers are packed on this fall. They're stopping their great reexaminations. Hopefully, those new refuges feedings will provide better opportunities for our partners to look at the first reported order on the new review proceedings. The judge in that case, at the board, sent a statement laying out the claim construction that doesn't cover that review. Hopefully, the new review proceedings will address the issue. The error in this case is an error on single claim fraud. The parties agree that it is not the court's decision on the claim construction. The claims are either valid or invalid. So, I'm going to limit my arguments to the claim construction issue and our ability to address the issue with respect to the statutory provision. The phrase here is construed under a broadest reason in construction, and not narrowly. It's admittedly invalid. Now, the age of one patent describes several different models, but this is not a single model in construction. One of those models includes what's known as a planet-satellite configurator. The planet being the equivalent location of the defibrillator, the satellites being equivalent to spins that are about the size of the ferrule of a fence that holds the eraser. The claim issue here relates to the phrases and the terms sensing and detection. And they're used in a phrase which the patent owner has attempted now by our control. I don't understand how you can read this claim as covering the planet and satellite embodiment since it talks about detection by the sensing circuit of the arrhythmia. And that's at the heart of the issue. I didn't look at the board's opinion, but the board said that sensing means detection with equal appreciation. Well, usually it does. In the context of electrical activity, the board is correct, and that is what the evidence says. But then it has to do with other problems. Well, so, I mean, what's unclear about the claim language? It talks about detection by the sensing circuit of an arrhythmia. And that detection, in the context of an electromechanical disassociation, is done by a mechanical pressure sensor. Because in an electromechanical disassociation, it's talked about in column 24 of the patent, the electrical activity is still following. The mechanical activity shows no refusing pulse. But can't the sensing circuit perform both the sensing function and the detector function? In a mechanical context, that is our position at hand. In an electrical context, the evidence of record by Dr. Pohl, who's a recognizance expert, 300 pounds to his name, in the field of cardiac arrhythmia management, says, look, I don't understand this. Well, they're trying to say if you apply it in an electrical context, because sensing means looking at the depolarization. Detecting means analyzing all those depolarizations. Well, usually sensing means that, but they've written a claim so that sensing involves detection of the arrhythmia. I mean, they wrote a claim two years after the case. And the claim is wrong. The claim is not a conclusion. There's nothing, as the patent office admits, there's nothing in the specification that uses this for arrhythmiology. Honestly, I believe that the patent office is gaining the system here. Well, what's unclear about the language here? The word detection, if used in context of mechanical and chemical, can mean something other than the analysis of depolarization electrical fields. There is nothing that limits it. If you take a look at the other original claims, you'll see that the sensing circuit in Claim 62 and 63 includes both mechanical and electrical sensors. So the patent clearly recognizes the combination of both of these could be used together to accomplish detection of arrhythmia. So detection and sensing is not just electrical signal and it's not just analysis of depolarization. It can be more. You're saying because there's no electrical detection in a stand-alone device, the invention can only cover the planet's satellite. No. My argument is there is no clear disavowal in that language given the fact that they also have mechanical and chemical that tell that claim language to just electrical. In the specification, the patent owner defined, goes to great lengths to be their own lexicographer, electrical function means electrical stuff. They knew how to limit this claim to just electrical activity, but they chose not to. And when faced with the opportunity... If we read this claim as limited to electrical activity, you lose. Yes, and that's wrong because they have not done so. They have not either enabled that or so made it clear disavowal in the original prosecution history so as to limit it to that. If you view the evidence of the record, if you take a look at paragraphs 12, 13, and 14 of Dr. Crowell's declaration, he goes in and talks about the issue. This is a confusing practice. But electrical function isn't in the claim. No, it is not. The word detection is in the claim. The word sensing is in the claim. Those have a meaning in the context of electrical activity, but this invention is more than just electrical activity. The invention expressly concludes that column six of the patent... You're really making an enablement argument, aren't you? I'm making an enablement argument separately, but this is a pure claim construction. And if you look at column six... But your claim construction argument depends upon enablement, whether or not they've enabled a planet satellite that doesn't have electrical detection. And as far as we're concerned, if they use mechanical or chemical, that is enabled. At page 22 of our blue brief, you'll see a chart that lays out the planet satellite and entirely intravascular bodies, and then has the three different kinds of chemical, mechanical, and electrical. That six-square chart has been in our brief and our filing since our first opportunity to respond after the initial office session. And in there, what we say is five listed boxes are enabled, and there's one that's placed in the classification where they're enabled. One isn't. And this claim, interpreted by the board and it's argued by the patent, is attempting to be directed to that one box, because that's the only one that was meaningful to my original client. Our argument is this claim cannot be broadly construed to just that one box. There's no clear disavowal that says the other five boxes should be ignored based on claim language that only contains the terms sensing and detection. It doesn't say electrical function. It doesn't say sensing electrical cardiac activity. It doesn't say detection based on depolarization of signals. All of which the patent owner was more than capable of doing during the reexamination should they choose to do so. Now, with respect to the enablement argument, my position is we were unable to examine that. Because in this reexamination, the examiner agreed with this original. And after the office action, where the patent owner amended some, but not all the claims, the owner canceled those claims. In response to our arguments for not enabling. And chose to write out only these unamended claims. And again, the second time around, the examiner in the reexam said, I agree with you, all the claims are retracted over the argument. It was only on the third strike, on the right of appeal notice, that the examiner in the reexam unit reversed his position. And at that point, contrary to what the patent officer suggested, I could have made an argument. I'm not allowed to make any more arguments at the right of appeal notice. I rule. So I had no ability to raise an issue that really revolved around the examiner doing his job to apply section 112 to this claims construction. And he couldn't do it, and I couldn't raise it. Up until the point that we're coming to court with it. But you didn't challenge the ordinary meaning of sensing and detection, right? Oh, yes, we did. That's the evidence of record that I petitioned after the right of appeal notice that Dr. Kroll's declaration testimony is. And at 89 of the board order, they cite Dr. Kroll's testimony. And in that testimony, he considers that sensing and detection in the context of electrical arrhythmia have an ordinary meaning. And then he goes on to say, but if you put that beyond the context of electrical arrhythmias, including mechanical and chemical, I don't know what the meaning. And that was the evidence of the record. And nobody on the record by a person's skills in the arts in this case thought otherwise. I'll reserve the rest of my time. All right. Thank you, Mr. Pedersen. Ms. Stoll. Good morning. Good morning to the court. I'm sitting here today with Mr. Charlton, provided by the beneficiary of the court, by public claims instructions. And Mr. Charlton covered a lot of things on this issue. We'll be, of course, on this agenda in a short time. And we'll be answering questions in a minute. But first, I want to start by talking about the question, whether these public claims cover electrical, chemical, and mechanical arrhythmias. I would say that this is a policy for the advisory opinion. As the board indicated on pages 817 through 18 of this opinion, the question of what kind of sentencing occurs is irrelevant to the prior charge, because none of the prior changes have divided who's offending or protecting an arrhythmia inside a blood vessel, regardless of whether the sentencing is chemical or mechanical or electrical. In any event, the second column, page 24, shall be column, I'm sorry, column 24. Column 24 shall be column 25, because there you'll see that what that's talking about is you can have a chemical blood pressure structure to discriminate between two different types of arrhythmias. Well, to discriminate, we're not going to be able to do the assessment of that arrhythmia. But instead, to determine whether that type of arrhythmia is harmful or not, whether it's hemodynamically stable or not. So that would be to answer claims that Mr. Peterson talked about, because I didn't talk about the violence of electrical and mechanical. You know they have to have electrical sentencing for dislocations. Turning to the question of enablement. Enablement is not part of the issue for this case, or it was argued a little. There is some sort of enablement mechanism that came along initially during the mid-camp. And they never pointed out that that's an improper issue and it could have come to the mid-camp. And the response was, we could all be in there. And it never made sense. There was any response that we heard about. We created a structure. We agreed on the claims, and we already made those terms. For detection of arrhythmias. Those terms aren't detection of all, they're detection of arrhythmias. And that's what this is called interpretation. And everybody, all the parties, understand that there were detections in that context. And of course, the question is for me. And you kind of waived the rules to allow the Crowell Declaration in, right? What happened was they petitioned. It was after the grant. And what happened was they petitioned for a false petition. And the PTO considered that petition, granted that petition, it was after the grant. And they were allowed to have a Crowell Declaration in. Let's hear from Mr. Johnson. For that reason, it's clearly waived. They argued, probably, that they didn't have an opportunity because the rules don't permit them to file that sort of argument after a grant. Well, as just mentioned, they know what the rules state when it comes to waiving particular rules. In this case, when they wanted to submit the Crowell Declaration, they knew that the rules do not permit evidence after a grant. But they filed a petition under 183, which specifically gives applicants an opportunity to waive whatever rules are available. And that's just what they did. They filed a 183 application requesting the office to submit the Crowell Declaration. And the office granted that particular petition. So although the rules, in this case, might not have permitted them to make the argument that they are now arguing now as it relates to Rule 906, they could have filed a 183 petition to request that the rules be waived. But fully aware of that rule, they chose not to do that. Do you waive under 183 in order to allow arguments that were not made before? I mean, I can understand waiving it to allow documentary evidence. I can have an affidavit. But what about legal arguments? Sure. They should have preserved those arguments below. And in other words, in this case, if they thought that Rule 906... So what if they didn't have the opportunity to preserve the arguments below? Sure. After they received the ring, what they should have done was argued 112. But if the office would have determined that it's improper under 906, at that point, they could have filed a 183 petition requesting that the director review the examiner's decision as it relates to the 906 rule itself. But they chose not to do so. What difference does it make? I mean, the statute is perfectly clear, isn't it? That 112 isn't part of the inter-parties re-exam at this point in time. And that's our second response, that the statutes are very clear as it relates to inter-parties re-examination. 311, the past statute, would state that requesters are to file their request based upon prior art. And 314 goes on to state that inter-parties re-examination proceedings are to be conducted based upon procedures of initial examination as outlined in 132 and 133. And those two provisions merely relate to notice that should be given to applicants as well as to projections and the timing that applicants should have when they respond to those particular exceptions. Does this issue have any significance for the future given the AIA? That's interesting because there are changes that would allow for these particular issues. Yeah, but construing the old statute has no significance for the future, right? Except there may be a few proceedings that are still under the old statute. As it relates to IPR, that's correct. But there are news post-grad that would allow for certain arguments to be made. So Congress actually contemplated this particular issue and they've provided some sort of remedy there in the statute. So it's our position that Congress's intent to have these sort of conditions restricted to just examination of prior art is clear. And to the extent that there might be some ambiguity in any of the past statutes relating to antipartisan examination, we believe our instruction is reasonable and should be entitled to deference. If there are. Thank you, Mr. Johnson. Mr. Pedersen. I'm just expecting this full validation that there's no prior art in this record providing the showing of the entirety of the past whether in a biased way, it's not chemical, mechanical, or sensing. I have to expect students to read as a rebuttal piece of prior art including three pieces of prior art in the filing after the rank. But again, the nature of this process we really weren't invited to do so and were never considered. We couldn't get them in. Once the game changed at the 11th hour from arguing pulse generator, which was arguing first office action and the second office action to arguing about sensing and detection of the claim construction issue in the right of appeal notice, our hands were tied. So we did put three references in there. Could we file another hierarchy re-exam or hierarchy review to challenge those? Yes, but my client has run out of money. Solely because of a five-year process of visitation. That's why Congress said this is a bad process. And the issue at the end of the day revolves on what's the meaning of this phrase that they chose to switch to at the 11th hour to try and narrow their claims. How do you clear this file when they're doing it by the 11th hour? In terms of the position that stable versus unstable chemodynamics are somehow not included in that, an issue first raised right before we even started today. That is not what persons feel when they're not in the service. And in fact, actually, if you take a look at that citation in the past, so that thing that talks about predicting what will happen. Predicting and determining are the two words used in the passage about stable versus unstable hemodynamic arrhythmias detected by mechanical sensing. Well, predict, detect, determine, all three of those are used about trying to figure out what kind of therapy you need to do in advance. More importantly, I would say if you take a look at claim 58 of the case, there in a mechanical sensing environment alone, because there are other dependent claims that add the electrical environment to the soil, in a mechanical sensing environment alone, you're delivering electrical therapy in response to something that's detected only by a mechanical sensor. So it's very clear that they meant to have therapy to treat arrhythmias based only on mechanical sensing With respect to the issues regarding 314A, we agree, by statute, as a requester, we cannot raise the statute on this whole issue. Our issue is what happens when Pat O'Connor argues a claim construction that we don't really disagree with. 314A says that prosecution should occur under section 132 of 133. And, you know, in your opinion, in your report telepathically, I thought you had the right approach, which was, once initiated, the re-exam needs to proceed according to normal examination rules and processes. I wrote a dissent. You wrote a dissent and in your report you're told about that. That's not the law. It is not the law. I'm arguing that it should be the law and that this case It will be the law in the future, won't it? That's what I would certainly hope, theoretically. Because this is a rebuttal position, that's what makes it different from the statutory proposition that they have raising it as a grounds for the deferred re-examination. And that's how I would say that this case presents a different situation, which you can see the problems with the U.S. PTO's rules as a result of their application to the Church. Thank you. Thank you, Mr. Feddersen. That concludes our morning.